J-S82003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
DERRICK WILLIAMS :
:
Appellant : No. 220 EDA 2018

Appeal from the Judgment of Sentence March 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010939-2013

BEFORE: LAZARUS, J., OLSON, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.: **FILED MARCH 08, 2019**

Derrick Williams appeals from the judgment of sentence, entered in the

Court of Common Pleas of Philadelphia County, following his conviction for

aggravated assault.[1] On appeal, Williams claims his mandatory sentence is

illegal, his conviction rests on insufficient evidence, and the verdict is against

the weight of the evidence. After careful review, we affirm.

On August 10, 2013, at Williams's home, he and his romantic partner,

K.A., drank alcohol, smoked crack cocaine and engaged in consensual sex,

after which Williams became physically violent, slapping K.A. and slamming

her into a door. K.A. subsequently went downstairs, pretending to need a

glass of water, but, in truth, hoping to escape without provoking Williams' ire.

After discovering that Williams kept his front door locked from the inside, K.A.

_____

[1] 18 Pa.C.S.A. § 2702.

_____

* Retired Senior Judge assigned to the Superior Court.

began screaming, hoping someone would call the police. In response, Williams forced K.A. into a chair and proceeded to choke her until she lost consciousness. Williams then nudged K.A. When she moved, he reacted by stating, "I thought you was dead." N.T. Trial, 8/11/16, at 71. After being assured she would be left alone, K.A. headed upstairs and pretended to sleep. When Williams fell asleep, K.A. searched for the key to the front door and found it hidden behind the television. K.A. left the house in her nightgown and jeans, heading for the nearby First District Police Station. Officer Jeffrey McGarvey spoke with her, later describing K.A. as distraught, with visible bruising on her neck and arms. He escorted her to the Special Victims' Unit, which documented and photographed her injuries.

On August 12, 2016, following a trial presided over by the Honorable Carolyn H. Nichols, the jury convicted Williams of aggravated assault, while acquitting him of rape, sexual assault, and indecent assault. On March 27, 2017, the court denied Williams' motion for extraordinary relief, challenging the weight and sufficiency of the evidence. That same day, the Commonwealth asserted the instant conviction represented Williams' third conviction for a crime of violence, thus requiring a mandatory minimum sentence of twenty-five years of total confinement.[2] In support, the

_____

[2] 42 Pa.C.S.A. § 9714(a)(2).

Commonwealth entered evidence of Williams' prior conviction for robbery[3] and of his prior guilty plea to burglary as a felony of the first degree.[4]  In addition to docketing information, the Commonwealth also entered notes of testimony from the preliminary hearing in Williams' burglary case, indicating a family was present in their own home when Williams attempted to steal their television and VCR.  The court found Williams committed two prior crimes of violence, requiring a minimum sentence of twenty-five years of incarceration.  Williams timely filed his notice of appeal on January 2, 2018.[5]

Williams presents the following issues for our consideration:

(1)   Whether the trial court erred when the court ruled that Derrick Williams was previously convicted of two crimes of violence and pursuant to 42 Pa.C.S. § 9714(a)(1), imposed a sentence of 25 to 50 years of incarceration.

(2)   Whether the evidence was sufficient as a matter of law to convict Derrick Williams of aggravated assault.

(3)   Whether the verdict was against the weight of the evidence.

---

[3] Docket number CP-51-CR-0705841-1996.

[4] Docket number CP-51-CR-0805631-1993.

[5] Williams filed his original notice of appeal on March 31, 2017.  On April 7, 2017 Williams petitioned to file post-sentence motions *nunc pro tunc*.  On June 23, 2017, this Court dismissed his appeal for failing to comply with Pa.R.A.P. 3517.  On August 28, 2017, he filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546, resulting in reinstatement of direct appeal rights on December 7, 2017.  Williams filed the instant notice of appeal on January 2, 2018. At that point Judge Nichols had already been elected to the Superior Court of Pennsylvania.  Consequently, we received Williams' appeal without an opinion pursuant to Pa.R.A.P.1925(a).

Appellant's Brief, at 6.

Williams contends the trial court erred in meting out a mandatory minimum sentence of twenty-five years' incarceration on the grounds that the Commonwealth failed to prove his guilty plea to first-degree burglary[6] constituted a predicate offense pursuant to 42 Pa.C.S.A. § 9714.

Section 9714, in relevant part, mandates a twenty-five year minimum sentence of incarceration under the following circumstance:

**(a) Mandatory sentence.--**

\* \* \*

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary . . .

42 Pa.C.S.A. § 9714(a)(2).

When an offender contests the accuracy of his criminal record, the Commonwealth is required to prove the prior convictions warrant the application of section 9714 by a preponderance of the evidence. 42 Pa.C.S.A. § 9714(d). The current version of section 9714(g),[7] under which Williams was

---

[6] Williams does not contest the validity of viewing his robbery conviction as a crime of violence under section 9714(g).

[7] Effective April 28, 2014.

sentenced, defines crimes of violence, in relevant part, as "burglary as defined in 18 Pa.C.S. § 3502(a)(1) (relating to burglary) . . ." 42 Pa.C.S.A. § 9714(g)

Section 3502 states a defendant commits burglary if, with the intent to commit a crime therein, he:

> (1)    (i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;
>
> (ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

Section 9714(g) limits the definition of burglary as a crime of violence to paragraph (1). Taking these requirements in tandem, a first-degree burglary conviction constitutes a crime of violence under section 9714(g) when the sentencing court determines the defendant entered a building or structure "adapted for overnight accommodation" when an individual was "present at the time of entry." *See Commonwealth v. Guilford*, 861 A.2d 365, 374–75 (Pa. Super. 2004) (defining circumstances where first-degree burglary is crime of violence under section 9714(g); holding guilty plea for second-degree burglary, even under conditions which could have constituted first-degree burglary, insufficient for purposes of section 9714(g) as statute requires conviction for crime of violence); *see also Commonwealth v. Samuel*, 961 A.2d 57, 65 (Pa. 2008) ("we hold that . . . whether a defendant

has been convicted of burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present [] is to be determined by the sentencing court.") (quotations omitted).

Williams was charged with and pleaded guilty to first-degree burglary under a previous version of the burglary statute,[8] which

> distinguished first-degree burglary from second-degree burglary based upon whether the building or structure entered was adapted for overnight accommodation and whether an individual was present at the time of entry. Only if neither of these conditions were true—i.e., that there was no risk of confrontation—was the entry a second-degree burglary.

**Commonwealth v. Chester**, 101 A.3d 56, 64–65 (Pa. 2014).

---

[8] The version of the burglary statute under which Williams was convicted reads, in relevant part, as follows:

> **(a) Offense defined.--**A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.
>
> * * *
>
> **(c) Grading.--**
> (1) Except as provided in paragraph (2), burglary is a felony of the first degree.
>
> (2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

18 Pa.C.S.A. § 3502 (1990).

Therefore, Williams' conviction under the 1990 burglary statute cannot, on its own, be used to infer the presence of both requirements. *See id.* The sentencing court, however, properly considered the transcripts of Williams' preliminary hearing. *See Commonealth v. Medley*, 725 A.2d 1225, 1229 (Pa. Super. 1999) ("[T]he court may receive any relevant information for the purposes of determining the proper penalty."). The court found the defendant knew he was pleading guilty to first-degree burglary, *inter alia*, on the basis of the following testimony offered by the victim at Williams' preliminary hearing:

> Approximately between [1:00] and 1:15, I heard glass breaking on my front porch. There was a small window to the right-hand side of my door. I heard the glass break. As I was getting dressed, I heard my son's voice coming up coming from outside. My wife and I came down the steps, saw the defendant on my front porch with the TV and the Nintendo system in his hand, with my son holding it, holding it at bay.

N.T. Sentencing, 3/27/17, at 24. In the eyes of the sentencing court, "the testimony at the preliminary hearing establishe[d] that the victims were present, and there was an encounter with the son of the victim." *Id.* at 25. We agree, and further concur, that these facts establish a proper basis for concluding Williams was convicted for perpetrating a crime of violence as defined by section 9714(g). *See Guilford*, *supra* at 374–75.

Williams' attempt to analogize his case to *Guilford* is unavailing. The court in *Guilford* found it improper to classify a burglary conviction as a crime of violence, though the underlying behavior met the requisite elements of

first-degree burglary, when the defendant pleaded guilty to second-degree burglary. ***Guilford***, ***supra*** at 374–75. Unlike ***Guilford***, the instant case presents a conviction for first-degree burglary presented in tandem with prior testimony indicating Williams entered a structure adapted for overnight accommodation, and did so while the structure was occupied.

Williams further submits the evidence was insufficient to sustain his conviction for aggravated assault, arguing the Commonwealth failed to prove the presence of a serious bodily injury or the necessary criminal intent.

Our standard of review with regard to sufficiency claims is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. . . . When performing this review, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.

***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super. 2013) (citation and quotation omitted).

The Crimes Code, in relevant part, defines aggravated assault as follows:

**§ 2702. Aggravated assault**

(a) Offense defined.--A person is guilty of aggravated assault if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life

18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines serious bodily injury as follows:

> **"Serious bodily injury."** Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

18 Pa.C.S.A. § 2602.

In order to provide evidence sufficient to sustain a conviction for aggravated assault, "the Commonwealth does not have to prove that the serious bodily injury was actually inflicted but rather that the Appellant acted with the specific intent to cause such injury." ***Commonwealth v. Holley***, 945 A.2d 241, 247 (Pa. Super. 2008) (citation omitted). We have previously explicated the Commonwealth's burden as follows:

> The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence. In determining whether the Commonwealth proved the Appellant had the requisite specific intent, the fact-finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom. A determination of whether an [A]ppellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis.
>
> An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] We must look to all the evidence to establish intent, including, but not limited to, [A]ppellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances. Moreover, depending on the circumstances even a single punch may be sufficient.

***Commonwealth v. Lewis***, 911 A.2d 558, 564 (Pa. Super. 2006) (internal citations and quotations omitted). This logic applies

"with equal force to prove recklessness to a degree that one would reasonably anticipate serious bodily injury as a likely and logical result" from one's actions. **Commonwealth v. Bruce**, 916 A.2d 657, 664 (Pa. Super. 2007) (finding "four or five blows to the face and throat" sufficient for inferring reckless intent to cause serious bodily injury, even in light of "minimal external injury to [victim's] face").

Alleging the Commonwealth failed to prove Williams possessed the requisite intent is, quite simply, unreasonable in light of the record. K.A. tried to escape Williams' house after a sexual encounter transitioned into a physical attack. After K.A. found herself trapped and made an attempt to extricate herself, Williams used both of his hands to strangle K.A. into unconsciousness. After nudging K.A.'s unconscious body, William's reacted with surprise to see her stir, stating, "I thought you was dead." N.T. Trial, 8/11/16, at 71. K.A.'s account of events was supported by Officer McGarvey's testimony and documentation of her injuries from the Special Victims' Unit. The jury, acting as finder of fact, drew a reasonable inference in determining that Williams acted with, at least, a reckless intent to cause serious bodily injury in light of the aforementioned attendant circumstances. **See Lewis**, **supra** at 564; **Bruce**, **supra** at 664.

Next, Williams claims that the verdict was against the weight of the evidence.[9] Given its unique vantage point, the trial court is ordinarily obligated to rule on challenges to the weight of the evidence and explain its reasoning through an opinion filed pursuant to Rule 1925(a),[10] reserving for the Superior Court the role of reviewing the trial court's analysis for a palpable abuse of discretion. *Armbruster v. Horowitz*, 813 A.2d 698, 702–703 (Pa. 2002) (citations and quotations omitted); *cf. Commonwealth v. DeJesus*, 868 A.2d 379, 383 (Pa. 2005) (requiring remand "where the trial court fails to prepare an opinion that addresses the issues upon which it passed and which are raised by a party on appeal"—a requirement, which under ordinary circumstances, is not dependent "upon the reason for the absence of an independent articulation by the court below of the reasons for its decisions.").

---

[9] Williams preserved his weight claim by including it in a timely-filed post-sentence motion. *See* Pa.R.Crim.P. 607.

[10] Rule 1925(a) states:

> Except as otherwise prescribed by this rule, **upon receipt of the notice of appeal**, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P.1925(a) (emphasis added).

Our Supreme Court created an exception for this Court to review timely-filed weight claims in the first instance under circumstances where the trial judge is permanently unavailable to do so, "including resignation, illness, death, and retirement, appointment to another court and election defeat." **Armbruster**, **supra** at 704. In such situations, "the claim must be reviewed by the appellate tribunal in the first instance" to avoid an untenable "burden upon the judicial process that would be occasioned by a rule requiring a new trial whenever the trial judge is unavailable to rule upon a post-verdict motion." **Id.**

Though Judge Nichols denied Williams' motion for extraordinary relief and stated her reasoning for doing so during his sentencing hearing,[11] the

_____

[11] Judge Nichols denied Williams' motion for extraordinary relief, which contained both a sufficiency claim and a weight claim, on the following grounds:

> All right. Looking at the Criminal Code Section 2702 for aggravated assault, a person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.
>
> The jury was so instructed by the Court on the law. As Mr. Tinari points out, the jury weighs credibility. The Court can't become a 13th juror. So the fact that there's no DNA is of no moment. They weigh credibility. And there was testimony by the complainant that the defendant, as Commonwealth counsel brings out, that he choked her, she passed out, and he made a comment like, thought you were dead. So, certainly, choking and the other physical striking that went on. The jury heard that testimony and weighed the credibility of the complainant and rendered their verdict.

procedural delays in the instant case prevented her from authoring a Rule 1925(a) Opinion before she assumed her current seat on the Superior Court. Though **Armbruster** did not specifically state *election* to a new court as grounds for finding a judge permanently unavailable, the non-exhaustive list it provided, including "resignation . . . retirement, *appointment* to another court and election defeat," indicates voluntarily vacating one's position on a court renders that judge permanently unavailable. **See id.** (emphasis added). Accordingly, we find Judge Nichols' election to this Court left her permanently unavailable to provide this court with a Rule 1925(a) opinion, requiring this Court to review Williams' weight claim in first instance. **Id.**

Under such circumstances, our review is plenary, though we are confined to the "cold record of the trial proceedings" in conducting our review.

---

Because the jurors are the judges of the facts. The Judge is the judge of the law. It's not for me to go back and second guess the facts or the credibility determinations of the jury.

Certainly, if there's a misstep in the law, obviously, that's where the Court needs to step in. But the jury heard that testimony, they weighed the credibility, they judged the weight of the evidence, and they convicted the defendant of aggravated assault in the first degree. There is no basis based on a preponderance of the evidence to grant a motion for extraordinary relief. The verdict of the jury should stand; and, therefore, the motion is denied.

N.T. Sentencing 3/27/17, 8–9.

***Commonwealth v. Izurieta***, 171 A.3d 803, 809–10 (Pa. Super. 2017)

(citation and quotation omitted).  We, therefore, apply the following standard:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (citations and quotations

omitted).  Moreover, when adjudicating weight claims based solely on a cold

record, we must do so:

> with an eye to the delicate balance that exists between the jury's exclusive role in assessing credibility, and our longstanding recognition of the power in courts to allow justice another opportunity to prevail when a verdict nevertheless shocks the judicial conscience.

***Armbruster***, ***supra***, at 705.

Williams specifically highlights K.A.'s inconsistent testimony and her

prior *crimin falsi* convictions as the principal factors that resulted in a verdict

against the weight of the evidence.  Brief of Appellant at 22.  We review

Williams' weight claim in first instance using the cold record of the trial

proceedings.  ***Izurieta***, ***supra*** at 809–10.

The trial record reveals the jury heard evidence of K.A.'s open felony

cases in addition to her *crimin falsi* convictions.  N.T. Trial, 8/11/16, at 77,

87–95. On cross-examination, counsel thoroughly challenged K.A.'s version of events, specifically highlighting the differences among her statements given at trial, during the preliminary hearing, and to the police the day of the incident. *Id.* at 87–124. In the presence of inconsistencies and a blemished record, the jury was free to evaluate K.A.'s statements and "believe all, part, or none of . . . [her] testimony." *Commonwealth v. Mitchell*, 902 A.2d 430, 444 (Pa. 2006). The jury's split verdict—finding Williams guilty of aggravated assault, but not guilty of rape, sexual assault, or indecent assault—evinces a conscientious process used in evaluating K.A.'s testimony. N.T. Trial, 8/12/16, at 54. Nothing in the full record, which contains substantial corroborating evidence from Officer McGarvey and the Special Victims' Unit, renders the jury's verdict so contrary to the evidence as to shock one's sense of justice. *See Armbruster*, *supra* at 705 (outlining standard by for adjudicating weight claims on cold record). We, therefore, find Williams' claim meritless.

Judgment of sentence affirmed.

Judge Olson joins this Memorandum.

Judge Strassburger files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/19